UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jimmy Williams,<br><br>      **Plaintiff,**<br><br>     -against-<br><br>The City of New York; Richard Pengel, in his individual capacity; Daniel Ehrenreich, in his individual capacity; Carlos Matos, in his individual capacity; and John and Jane Does 1 through 7, each in his or her individual capacity,<br><br>      **Defendants.** | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>11 Civ. 5202 |

## PRELIMINARY STATEMENT

1.  This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants commissions of acts under color of law in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION

2.  This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4).

## VENUE

4.  Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

5.  The Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

6.     Plaintiff JIMMY WILLIAMS is a resident of New York. He is currently employed by Altech Light-Rail as a maintenance worker.

7.     Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8.     The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9.     At all relevant times herein, defendant Richard Pengal, Daniel Ehrenreich, Carlos Matos and John and Jane Does 1 through 7 (the "Individual Defendants") were employed by the NYPD and were each acting in the capacity of agent, servant, and employee of the City.

10.     Plaintiff is unable to determine the actual names of John and Jane Does 1 through 7 at this time and thus sues them under fictitious names.

11.     At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The Individual Defendants

were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

## STATEMENT OF FACTS

12.     On April 10, 2009, at approximately 5:30 AM, plaintiff Jimmy Williams was lawfully parked in a friend's Land Rover near the corner of Lenox Avenue and West 128th Street in Manhattan.

13.     Also in the car with Mr. Williams was Larry Alston and Reginald Stephenson.

14.     Moments before, Mr. Williams had seen Mr. Alston and Mr. Stephenson hailing a cab and offered them a ride to the Bronx, where Mr. Williams was headed.

15.     An unmarked police vehicle drive slowly past the Land Rover, made a U-turn and pulled up behind it.

16.     Defendant Police Officer Pengle approached the driver's side window and ordered Mr. Williams, Mr. Alston and Mr. Stephenson to get out of the car, which they did.

17.     At Officer Pengel's request, Mr. Williams produced his driver's license.

18.     Officer Pengel searched Mr. Williams in the street but found nothing illegal.

19.     Defendant Police Officer Ehreneich searched Mr. Alston on the street. He recovered crack cocaine and heroine, which had been concealed on Mr. Alston's person.

20.     No drugs or any other contraband whatsoever were found on Mr. Williams's person or in the Land Rover he was driving.

21.     Mr. Williams, Mr. Alston and Mr. Stephenson were placed under arrest and transported to the 32nd Precinct.

22.     At the precinct, Mr. Williams was subjected to a visual body cavity strip search where he was ordered to take off all his clothes, squat, spread his buttocks and lift his genitals in front of Officer Pengel and an additional police officer.  Feeling he had no choice in the matter, Mr. Williams complied.  The cell in which Mr. Williams was subjected to this degrading strip search was not private and could be seen by any officer or detainee that may have walked by.

23.     The police then asked Mr. Williams whether they could search the Land Rover with the assistence of dogs. Having nothing to hide, Mr. Williams authorized the search. The police found nothing during their search.

24.     Mr. Williams was then taken into an interrogation room where he was told that the police would not release his vehicle unless Mr. Williams gave them information on illegal activity in the neighborhood. Mr. Williams responded that he had no knowledge of any criminal activity and could therefore provide no such information. Mr. Williams was then returned to his cell.

25.     From the precinct Mr. Williams was brought to Central Booking where he was arraigned the following day on a felony complaint charging him with Criminal Possession of a Controlled Substance in the Third Degree (PL § 220.16(1)). Bail was set at $7500.

26.     Unable to have bail posted right away, he remained in custody until approximately April 21, 2009.

27.     Sometime thereafter, based on the testimony of defendant officers Pengel and Ehrenreich, a grand jury voted to indict Mr. Williams for Criminal Possession of a Controlled Substance in the Third Degree (P.L. § 220.16(1)) and Criminal Possession of a Controlled Substance in the Fifth Degree (P.L. § 220.06(5)) under Indictment number 1759-2009.

28.     When Mr. Williams was arraigned on the indictment on May 20, 2009, Judge Carol Berkman increased his bail to $10,000. As a result, Mr. Williams was again detained until he could post bail the following day.

29.     On January 11, 2010, Mr. Alston pled guilty to criminal possession of a controlled substance in the third degree. During his allocution, Mr. Alston swore that the drugs were solely his.

30.     Mr. Stephenson also pled guilty to criminal possession of a controlled substance in the seventh degree for drugs that were discovered concealed on his body during a strip search at the precinct.

31.     On February 17, 2010, the court granted the District Attorney's motion to dimiss all the charges against Mr. Williams.

32.     The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

33.     This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C.§ 1983 Against the Individual Defendants

34.     All other paragraphs herein are incorporated by reference as though fully set forth.

35.     By arresting, detaining, strip searching, charging and prosecuting the Plaintiff, the Individual Defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment, and malicious prosecution.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

36.     All other paragraphs herein are incorporated by reference as though fully set forth.

37.     Municipal liability for the violations of the Plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

38.     At all times material to this complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

39.     At all times material to this complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants supervisors of their need to train, screen, supervise or

discipline said defendants.   The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the Plaintiff requests that this Court:

     1.     Assume jurisdiction over this matter;

     2.     Award compensatory and punitive damages to the Plaintiff against the defendants, jointly and severally;

     3.     Award the Plaintiff reasonable costs, disbursements and attorneys fees; and

     4.     Grant any other relief the Court deems appropriate.

Dated:  New York, New York
       July 27, 2011

                    Respectfully submitted,

                    Darius Wadia, L.L.C.

                    /s/

                    _____
                    By:  Darius Wadia (Bar number DW8679)
                    Attorney for Plaintiff
                    233 Broadway, Suite 2208
                    New York, New York  10279
                    dwadia@wadialaw.com
                    (212) 233-1212