UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

Jimmy Williams,

**Plaintiff,**

-against-

11 Civ. 1502 (JGK)

The City of New York; Richard Pengel, in his individual
capacity; Daniel Ehrenreich, in his individual capacity;
Carlos Matos, in his individual capacity; and John and Jane
Does 1 though 7, each in his or her individual capacity,

**Defendants**.

------------------------------------------------------------------------ x

# <u>DEFENDANTS' MOTIONS *IN LIMINE*</u>

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
Attorneys for Defendants
Of Counsel: Morgan D. Kunz
Senior Counsel
Melissa Wachs
Assistant Corporation Counsel

## PRELIMINARY STATEMENT

Plaintiff Jimmy Williams ("plaintiff") brings this action against Police Officers Daniel Ehrenreich, Carlos Matos, and Richard Pengel ("defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his federal civil rights. Specifically, plaintiff alleges that he was falsely arrested on April 10, 2009, by defendant Police Officers Daniel Ehrenreich, Carlos Matos, and Richard Pengel.

Trial in this matter is scheduled to be designated trial-ready before the Honorable John G. Koeltl, United States District Judge, on July 6, 2012. Accordingly, defendants respectfully submit this Memorandum of Law in support of their motion seeking the following *in limine* relief: (1) plaintiff's malicious prosecution claim should be dismissed; (2) plaintiff's claims against the City of New York should not be put to a jury; (3) defendants should be allowed to introduce evidence of plaintiff's prior arrest history; (4) plaintiff should be precluded from calling Donald Williams as a witness; (5) plaintiff should be precluded from introducing evidence or inquiring into the Officers' disciplinary histories and the contents of their personnel files; (6) plaintiff should be precluded from referring to and offering evidence at trial of any NYPD procedure or Patrol Guide provision; (7) plaintiff should be precluded from offering any evidence that defense counsels are City attorneys and that the City may indemnify the remaining defendants; (8) plaintiff should be precluded from suggesting a specific dollar amount to the jury; and (9) plaintiff should be precluded from raising any claims against "John and Jane Does 1 through 7" and said defendants should be removed from the caption of the complaint.

## POINT I

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANT OFFICERS ARE ENTITLED TO ABSOLUTE IMMUNITY AS GRAND JURY WITNESSES

To successfully bring a claim for malicious prosecution under § 1983, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's action." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (quoting Russell v. Smith, 68 F.3d 33, 35 (2d Cir. 1995)); see also Broughton v. State. 37 N.Y.2d 451, 458, cert denied, 423 U.S. 929 (1975).

Under New York law, a grand jury indictment creates a presumption of probable cause for the purposes of a malicious prosecution claim. Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000) (citing Marshall v. Sullivan, 105 F.3d 47, 54 n.2 (2d Cir. 1996)). This presumption of probable cause "may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

In this case, plaintiff's main argument rebutting this presumption of probable cause is based on a "Competing Testimony Plus" standard used in Boyd v. City of New York. 336 F.3d 72 (2d Cir. 2003) (conflicting testimony between the plaintiff and defendant officers was enough to "support the inference that the indictment was secured by bad faith conduct on the part of the police" when another source corroborated the plaintiff's testimony). Specifically, plaintiff argues that his consistent testimony coupled with the testimony of non-party witness Brenda Jones, allows a jury to find that his indictment was secured through false and fabricated grand jury testimony of defendant officers. This argument is now moot as a result of the Supreme

Court extending absolute immunity grand jury witnesses for any § 1983 claim to based on their testimony.

The plaintiff cannot prevail on this claim for malicious prosecution in light of the recent Supreme Court decision in <u>Rehberg v. Paulk</u>. No. 10-788, 2012 U.S. LEXIS 2711 (April 2, 2012). The holding in <u>Rehberg</u> establishes that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony. <u>Rehberg</u>, at *23-24. Therefore, the defendant officers are entitled to absolute immunity as grand jury witnesses and the plaintiff's malicious prosecution claim should be dismissed.

Grand jury witnesses are entitled to absolute immunity from any § 1983 claim based on the witness' testimony. <u>Id.</u> at *23-24. The reasoning behind granting absolute immunity for grand jury witnesses is the same logic previously used to grant absolute immunity for trial witnesses. <u>Id.</u> *20-21. The main concern is that the grand jury may be deprived of critical evidence and the truth-seeking function of the tribunal weakened, as a result of a witness' fear of retaliatory litigation. <u>Id.</u> Additionally, the potential of civil liability is not necessary to prevent false testimony, as there are other sanctions in place, such as prosecution for perjury, which provides a sufficient deterrent. <u>Id.</u> at *21.

Moreover, in <u>Rehberg</u>, the Supreme Court declined to adopt any distinction between law enforcement witnesses and lay witnesses. <u>Id.</u> at *21. The Court laid out three factors that weigh in favor of extending absolute immunity to police officer witnesses. <u>Id.</u> at *22. First, officers frequently testify, and forcing them to defend against claims based on that testimony would detract from their ability to do their jobs and enforce criminal law. <u>Id.</u> at *22-23. Second, if the liability of the police officer witness is based upon the exoneration of the accused, then it could influence decisions on appeal and collateral relief. <u>Id.</u> at *23. Third, police officers do not need

the civil liability as a deterrent, because they are subject to sanctions, resulting from their position, including loss of their jobs and other employment-related sanctions.  Id.

In the instant case, the defendant officers are entitled to absolute immunity from any § 1983 claim, including malicious prosecution, stemming from their grand jury testimony.  The plaintiff's claim that his indictment was secured through false and fabricated grand jury testimony of defendants Pengel and Ehrenreich cannot circumvent the absolute immunity that is granted to grand jury witnesses, including police officer witnesses.  Id. at *24 ("In addition, …, this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution…We decline to endorse a rule of absolute immunity that is so easily frustrated.").  Accordingly, the plaintiff's claim of malicious prosecution should be dismissed with prejudice.

## POINT II

### PLAINTIFF'S CLAIMS AGAINST THE CITY OF NEW YORK SHOULD NOT BE PUT TO THE JURY

In order to prevail on a 42 U.S.C. § 1983 claim against the City, plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights.  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 - 91 (1978); Sarus v. Rotundo, 831 F.2d 397, 400 (2d Cir. 1987).  "[T]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . Second, the plaintiff must establish a casual connection - - an "affirmative link: - - between the policy and deprivation of his constitutional rights."  Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8

(1985)). Therefore, in order to establish municipal liability, plaintiff must establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." <u>Monell</u>, 436 U.S. at 694. Assuming plaintiff satisfies this initial burden, he must also establish an affirmative link between this "policy" and their specific constitutional deprivations. <u>Vippolis</u>, 768 F.2d at 44.

It is well settled that a plaintiff must do more than simply state that a municipal policy or custom exists. The "mere assertion that a municipality has such a policy is insufficient to establish *Monell* liability." <u>Perez v. City of New York</u>, 97 Civ. 2915 (FB), 2002 U.S. Dist. LEXIS 4297, at *4 (E.D.N.Y. Mar. 14, 2002); <u>Pugh v. City of New York</u>, 01 Civ. 0129 (ILG), 2002 U.S. Dist. LEXIS 2976, at *9 (E.D.N.Y. Jan. 15, 2002); <u>see</u> <u>also</u> <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993) ("the mere assertion … that a municipality has … a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

Additionally, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991); <u>Perez</u>, 2002 U.S. Dist. LEXIS 4297, at *6; <u>Brodeur v. City of New York</u>, 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y. Mar. 18, 2002) (court dismissing complaint against City where complaint "flatly asserts a policy but contains no factual allegations sufficient to establish a municipal policy or custom"); <u>George v. Burton</u>, 00 Civ. 143 (NRB), 2001 U.S. Dist. LEXIS 24, at *5 – *6 (S.D.N.Y. Jan. 4, 2001) (court dismissing complaint with prejudice where plaintiff "failed to proffer any facts in his complaint from which we can infer such a pattern or practice").

Here, plaintiff has not established municipal liability on the part of the City. As an initial matter, plaintiff's complaint is devoid of any allegations concerning specific policies and practices of the City of New York, and therefore plaintiff has failed to properly and sufficiently plead a *Monell* claim. Rather, plaintiff alleges in conclusory fashion that the City's "customs, policies, usages, practices, procedures and rules" led to the violation of his federal constitutional rights. Despite these conclusory allegations, plaintiff has utterly failed to come forward with any evidence to support his allegations, which is "fatal" to this claim. <u>Griffin v. City of New York</u>, 287 F. Supp.2d 392, 395 (S.D.N.Y. 2003) (*Monell* claim dismissed where plaintiffs failed to come forward with any evidence to show that the events alleged in the complaint took place according to a municipal custom or policy).

Instead of relying on objective evidence to support his claims of municipal liability, plaintiff exclusively relies on his own conclusory allegations. In this regard, plaintiff cannot create a genuine issue of fact requiring a trial on his claims solely by relying on his own self-serving testimony or allegations. <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citation omitted) (a party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment"). In sum, because plaintiff has no evidence whatsoever to prove the existence of an unlawful policy, any municipal liability claim against the City of New York should be dismissed as a matter of law.

Given the fact that discovery has been completed and plaintiff is on the verge of trial in this matter, the time has long since passed for plaintiff to have identified and articulated a coherent theory of municipal liability but he has failed to do so. In this regard, plaintiff has failed to meet his burden. Instead of presenting evidence to support a discrete and well-reasoned municipal liability claim, plaintiff has relied on the rote language in the Complaint to allege that

the City is responsible for violating his constitutional rights. Plaintiff's vague and undeveloped <u>Monell</u> claim fails to pass muster and cannot form the basis of liability against the City.

For these reasons, plaintiff's claims against the City of New York must be dismissed with prejudice as a matter of law.

## POINT III

### DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF, AND EXAMINE PLAINTIFF ON, HIS ARREST AND CONVICTION HISTORY.

Defendants should be permitted to introduce evidence of, and question plaintiff on, his prior arrests and convictions under Rules 402, 404(b), 609(a)(1), 609(a)(2), 609(b) and 608(b) in order to refute and mitigate his claim for damages arising out of his April 10, 2009 arrest and for impeachment purposes.

In this action, plaintiff is claiming damages for approximately eleven days of detention as a result of his April 10, 2009 arrest. In addition to seeking damages for his loss of liberty, plaintiff alleges that he suffered and continues to suffer anxiety, mental anguish, embarrassment, and humiliation from being falsely arrested. In addition to plaintiff's April 10, 2009 arrest. However, plaintiff has been arrested at least five additional times prior to this incident. Plaintiff testified at his deposition on April 16, 2012, that, as a result of one of his arrests, he was incarcerated for a year and a half. (Pl. Dep. Tr. 24:19)[1]

Should the jury determine that damages are warranted in plaintiff's case, the amount of time plaintiff spent in detention on each of his prior arrests bears directly on the issue of any damages stemming from his time in police custody as a result of his April 10, 2009 arrest.

---

[1] Additionally, the two arrest charges resulted in two day-long detentions at Central Booking, (Pl. Dep. Tr. 27:6-7; Id at 37:25) while a third entailed a shorter period of time at Central Booking (Id. at 33:23).

As the Court is aware, nominal damages are not permitted in false arrest cases. <u>Kerman v. City of New York</u>, 374 F.3d 93, 124 (2d Cir. 2004). If it finds liability against defendants, the jury must award compensatory damages for plaintiff's loss of liberty based on plaintiff's actual time in custody. <u>Kerman</u>, 374 F.3d at 124-26. Accordingly, it is necessary for the jury to compare the approximately eleven days plaintiff spent in custody in this case to the time plaintiff spent in detention for his prior arrests to measure damages, if any, for plaintiff's claimed loss of liberty.[2] Plaintiff's April 10, 2010 arrest and alleged damages must be placed in context for the jury through his other arrests, convictions, and other experiences with law enforcement, and therefore are relevant in the instant litigation under Rule 402.

Courts in both the Southern and Eastern Districts of New York have permitted inquiry into a plaintiff's arrest history for the purposes of damages in a false arrest case. A common rationale is that "one who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never been detained." <u>Wilson v. City of New York</u>, No. 06 Civ. 229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006); <u>see also</u> <u>Schiller v. City of New York</u>, No. 04 Civ. 7922 (KMK), 2006 U.S. Dist. LEXIS 88854, at *24-25 (S.D.N.Y. Dec. 7, 2006) (same); <u>Ellis v. City of New York</u>, 06 Civ. 4827 (LTS), Order Resolving Motions <em>In Limine</em> (S.D.N.Y. June 18, 2007) (same); <u>Banushi v. P.O. Palmer</u>, No. 08 Civ. 2937 (KM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011) (finding plaintiff's prior arrest and incarceration history relevant to a jury's determination of emotional damages under Rule 402). Furthermore, the probative value of arrest history evidence "is not substantially

---

[2] Plaintiff was in custody from April 10, 2009 until April 21, 2009. Plaintiff was arrested on April 10, 2009 and arraigned on the charges on April 11, 2009. Plaintiff was Indicted by the Grand Jury on April 15, 2009 at which point he was placed in custody for an additional night, until making bail the following day. Plaintiff's time in custody attributable to his false arrest claim is cut off at the time of his arraignment. Any further time in Department of Correction custody, post-arraignment, is attributable to plaintiff's malicious prosecution claim., which the defendants argue, <em>supra,</em> should be dismissed.

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Banushi, 2011 U.S. Dist. LEXIS 419, at *7-9 (internal quotations omitted) (quoting Picciano v. McLoughlin, No. 07 Civ. 0781 (GTS), 2010 U.S. Dist. LEXIS 114704, at *7 (N.D.N.Y. Oct. 28, 2010).

Defendants do not seek to admit evidence as to the nature of the crimes for which plaintiff was previously arrested. Rather, defendants will only seek to elicit evidence concerning the fact that plaintiff was arrested and the experience that plaintiff had while being processed for those arrests.[3] See Ramos v. County of Suffolk, 707 F. Supp.2d 421, 424 (E.D.N.Y. 2010) (permitting defendant to question plaintiff about whether she had ever been arrested prior to and after the incident that was the subject of the litigation because the fact of the arrest "affected the plaintiff's claim for emotional distress damages," but precluding defendant from "go[ing] into what the reason for the arrest is."); Wilson v. City of New York, 06-CV-229 (ARR)(VVP), 2006 U.S. Dist. LEXIS 90050, at *1 (E.D.N.Y. 2006) (holding that plaintiff's prior experiences involving arrest and detention, including those which ended favorably and whose records are therefore sealed, may be relevant to the damages determination the jury will be asked to make at trial). As defendants do not seek to use these prior arrests as evidence that plaintiff acted in conformity with his prior bad acts, they submit that testimony regarding plaintiff's arrest and incarcerations is relevant, and hence admissible, under Federal Rules of Evidence 402 and 403.

As evidenced above, plaintiff is not a stranger to the criminal justice system and the circumstances of his prior arrests and detentions are relevant to an assessment of his damages in the current case. Allowing plaintiff to explain the emotional impact of this arrest without allowing the defense to present evidence of his prior arrests, convictions and their emotional

---

[3] Inasmuch as plaintiff brings a claim relating to his strip search on April 10, 2009, it is relevant to note that he had been strip searched by the police after a prior arrest. (Pl. Dep. Tr. 112-11-3)

impact on him would deprive the jury of a crucial piece in determining just how this particular arrest may have emotionally impacted plaintiff.  Accordingly, defendants should be permitted to elicit evidence regarding the fact that plaintiff has previously been arrested and the experience that plaintiff had while being processed for those arrests.

### POINT IV

**PLAINTIFF SHOULD BE PRECLUDED FROM CALLING DONALD WILLIAMS AS A WITNESS**

Plaintiff's friend, Donald Williams, should not be allowed to testify on the grounds of relevance under Fed. R. Evid. 401, 402, and 403; hearsay under Fed. R. Evid. 802; and most significantly, for lack of personal knowledge under Fed. R. Evid. 602.  Plaintiff's only interaction with Donald Williams on the day of the incident consisted of physical contact with him hours before, and a phone call that shortly preceded the arrest. (Plaintiff's Deposition,  p. 53, lns: 25; P. 54, lns 1-5; 145, lns 20-25).  As such, any testimony that Donald Williams could offer would be cumulative to that offered by plaintiff and would likely cause undue delay in the trial and jury confusion.  Moreover, to the extent that Donald Williams has learned about the facts of the incident from her son, such evidence would be hearsay

### POINT V

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OR INQUIRING ABOUT ANY CIVILIAN COMPLAINT REVIEW BOARD COMPLAINTS AND INTERNAL AFFAIRS BUREAU INVESTIGATIONS ALLEGED AGAINST OFFICERS ENHRENREICH, MATOS, OR PENGEL OR ANY OFFICER THAT MAY BE CALLED AS WITNESSES**

Plaintiff should be precluded from introducing into evidence or inquiring about any prior Civilian Complaint Review Board ("CCRB") complaints and Internal Affairs Bureau ("IAB") investigations, or any other investigations, taken or alleged against defendants Police Officers Daniel Ehrenreich, Carlos Matos and/or Richard Pengel and any other non-party police officer that may be called as a witness. Defendants Ehrenreich, Matos, or Pengel have never been the subject of any substantiated complaint containing allegations similar to those in this matter, therefore defendants respectfully submit that any documents, along with any line of questioning, concerning these matters should not be admissible pursuant to the Fed. R. Evid. 404(b) and 403.

Rule 404(b) of the Federal Rules of Evidence provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b). Courts have consistently prohibited litigants from doing exactly what plaintiff may try to do in this case -- i.e., introduce evidence of a party's prior allegations of misconduct in an attempt to show the party's propensity to commit a particular act in question. As the Supreme Court held in <u>Huddleston v. United States</u>, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Thus, Rule 404(b) requires a two-part analysis: first, whether the proposed evidence fits within one of the "exceptions" provided by the Rule, and second, even if it does, whether under Rule 403 the evidence's probative value is substantially outweighed by

the potential for jury confusion or prejudice.  <u>Lombardo v. Stone, et al.</u>, 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *8 (Jan. 29, 2002, SDNY).

The Second Circuit has  uniformly held that evidence of an officer's past bad acts are only admissible under Rule 404(b) if the alleged past bad act has a close nexus with the acts complained of by plaintiff in his complaint.  Exemplary of this rule is the case of <u>Berkovich v. Hicks</u>, 922 F.2d. 1018 (2d. Cir. 1991) where plaintiff sought to introduce a police officer's past CCRB complaints to prove a "pattern of conduct" on the part of the officer with respect to his false arrest and excessive force claims.  In upholding the trial court's exclusion of the CCRB complaint, the Court held that: "[t]o merit admission under this theory, the extrinsic acts must share "unusual characteristics" with the act charged or represent a "unique scheme." <u>Berkovich</u>, 922 F.2d. at 1022 -1023 <u>citing</u> <u>United States v. Benedetto</u>, 571 F.2d 1246, 1249 (2d Cir. 1978).  Though the CCRB complaints at issue in <u>Berkovich</u> were unsubstantiated, the Court made it clear that even "[a]ssuming the seven prior complaints could be proved, they do not show the kind of *modus operandi* claimed in this case."  <u>Id.</u>

Even assuming that a prior complaint filed against any police officer is somehow relevant to this case, it is nevertheless inadmissible under Rule 403.  In <u>Valenzuela v. Abate</u>, 92 Civ. 9309, 1996 U.S. Dist. LEXIS 510 (S.D.N.Y. Jan. 22, 1996), the court found that, even if prior complaints had been relevant to some issue in the case (e.g., the existence of a pattern or a motive), the information about the incidents would still be inadmissible pursuant to Rule 403's balancing test because they occurred several months prior to the event that was the subject of the complaint.  "Such temporal dislocation severely limits the probative value the incidents offer."  <u>Id.</u> at *11.  Consequently, any information regarding any prior complaints are inadmissible pursuant to Rule 403, since any assumed probative value of such information is

both minimal and substantially outweighed by its significant potential to prejudice the jury. See Lombardo v. Stone, 99 Civ. 4603, 2002 U.S. Dist. LEXIS 1267 *11-12 (S.D.N.Y. Jan. 29, 2002) ("Rule 403 prohibits the introduction of similar act evidence, even when offered for a proper purpose, where its prejudicial effect, tendency to confuse the jury or to delay the trial outweighs its probative value").

Furthermore, neither Officers Ehrenreich, Matos, or Pengel have had any false arrest claims levied against them, either by IAB or CCRB. The only charge that has been substantiated was as against Office Pengel for failure to properly make an entry in his memo book, an incident which has no relevance to the instant case and should not be allowed into evidence.

Finally, the courts have made it clear that, even where the evidence concerning unsubstantiated allegations are sought to be introduced not to show that an officer committed a specific act of misconduct but rather to demonstrate that the City of New York is liable based on a deliberate indifference theory, such evidence should be excluded from evidence at trial. Marcel v. City of New York, et al., 1990 U.S. Dist. LEXIS 4094, *22-*23 (S.D.N.Y. Apr. 11, 1990) (holding that "Unsubstantiated CCRB reports do not demonstrate a breach of a municipality's duty to train or supervise its police."); Law v. Cullen, et al., 613 F. Supp. 259, 262 (S.D.N.Y. July 15, 1985) ("In the absence of any substantiated charges of abuse, there is no basis for plaintiff's claim that Officer Cullen had a 'propensity' to use excessive force and, hence, no basis for its claim that the City was deliberately indifferent to such a propensity."); Sealey v. Fishkin, et al., 1998 U.S. Dist. LEXIS 20142, *9-*10 (E.D.N.Y. Dec. 2, 1998) (finding that "The officer's Civilian Complaint Review Board history report…shows that none of these claims was ever substantiated. Thus, this evidence would not suffice to prove deliberate indifference by the

city to the need for any further training of this officer in particular or police officers in general."). Moreover, inquiry about any disciplinary histories, and other civil rights claims could not be used to establish any of the 404(b) exceptions because, if the Court dismisses plaintiff's <u>Monell</u> claim, the City of New York will no longer be a defendant in this action and as such, plaintiff has no claim for municipal liability. Second, the potential for confusion or prejudice substantially outweighs any probative value. Applying these factors, plaintiff should be precluded from questioning the individual defendant as well as any non-party Officers who may testify regarding their disciplinary histories and/or other civil rights claims which have been filed against them.

Accordingly, plaintiff should not be permitted to examine any witnesses concerning any prior or subsequent complaints or investigations. As indicated above, such evidence is barred by Rule 403 and 404(b) and will only serve to confuse and prejudice the jury.

**POINT VI**

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO AND OFFERING THE PATROL GUIDE INTO EVIDENCE AT TRIAL.**

Plaintiff should be precluded from referring to and offering the Patrol Guide into evidence at trial on the grounds that it is irrelevant to any disputed issue. Alleged violations of the Patrol Guide by defendants Enhrenreich, Matos or Pengel are irrelevant to the determination of whether plaintiff's constitutional rights were violated. Thus, the Patrol Guide should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, the standards set forth in the Patrol Guide are merely guidelines established by the New York City Police Department, and not the standards of the United States Constitution. The Patrol Guide is voluminous and should not be used to scrutinize the finer details of wholly lawful officer conduct using minor guidelines. <u>Galapo v. City of New York,</u> 95

N.Y.2d 568, 574-75 (2000) (holding "the Patrol Guide is an internal manual - nearly 1,500 closely printed pages - containing thousands of rules, procedures and policies adopted by the Police Commissioner for the governance, discipline, administration and guidance of the Police Department…[i]t is not a body of law nor regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities").

In light of plaintiff's claims that his constitutional rights were violated, any of these NYPD guidelines, whether or not followed to the letter, are irrelevant to the determination of whether plaintiff's constitutional rights were violated. See Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996)(violations of police rules regarding backup and radios not relevant to excessive force); Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991) (violation of procedure in failing to call for backup or use a flashlight irrelevant to excessive force claim); see also Woods v. Jefferson Cty Fiscal Court, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. January 8, 2003) (in excessive force claim "whether an officer followed or violated police department policy or guidelines is not relevant under Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed. 2d 443 (1989)"); Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"); Romero v. County of Lake, 60 F.3d 702, 705 (10th Cir. 1995) ("violations of state law and police procedure generally do not give rise to a 1983 claim"), See also Galapo, 95 N.Y.2d at 574-75 (2000) (NYPD Patrol Guide should be excluded from evidence because it does not create legal duties). Any Patrol Guide section should therefore be precluded under Fed. R. Evid. 402, which

prohibits the admission of evidence which is not relevant.  <u>Lee v. City of New York, et al.</u>, 00-CV-3181 (JG)(RLM).

Any reference to alleged "violations" of the Patrol Guide, meaning that the officers did not follow the exact guidelines, would only confuse the jury.  The jury will be called upon, in this action, to determine whether defendants Ehrenreich, Matos, and/or Pengel violated plaintiff's constitutional rights, which is to be evaluated by the jury under essentially the same standard as is applicable to the constitutional and Section 1983 claims.  If the jury is presented with the proffered portions of the Patrol Guide, it is likely to assume, wrongly, that the Patrol Guide sets out the standard by which they are to evaluate defendants Ehrenreich, Matos, and Pengel's arrest of Marshall, notwithstanding a contrary instruction from the Court.  In fact, an officer could follow the Patrol Guide and still violate an individual's constitutional rights or not follow the Patrol Guide and not violate an individual's rights.  Therefore, any reference to alleged "violations" of the Patrol Guide are irrelevant, unfairly prejudicial, and would only confuse the issues and the jury.  Accordingly, the Patrol Guide should therefore be precluded pursuant to Fed. R. Evid. 403.

<b><u>POINT VII</u></b>

**PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR OFFERING ANY EVIDENCE REGARDING THE CITY OF NEW YORK'S POTENTIAL INDEMNIFICATION OF DEFENDANTS EHRENREICH, MATOS AND PENGEL_____**

Plaintiff should be precluded from mentioning or offering any evidence of the City of New York's potential obligation to pay a damages award by indemnifying the defendant officers Enhrenreich, Matos, and Pengel, should a jury find them liable.  If the jury is permitted to assume that any verdict will be paid by the City out of its budget, the jury may not

carefully assess issues of liability or determine plaintiff's alleged damages with any precision. This is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance. See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds. McCormick § 168; Annot., 4 A.L.R.2d 761.").

Indemnification has no bearing on the facts of plaintiff's claims pursuant to 42 U.S.C. § 1983 or damages. In Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997), the Second Circuit held that the existence of an indemnification agreement is relevant only where the individual defendants adduce evidence of their personal financial resources at trial. Here, the defendants Enhrenreich, Matos, and Pengel are not seeking to proffer evidence regarding their personal financial resources and ability to pay punitive damages at trial. Therefore, based upon the precedent established in this Circuit there is no relevant basis for the admission of indemnification evidence at trial and accordingly such evidence should be precluded. See Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *24-25 (S.D.N.Y. Oct. 25, 2007) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds) (citations omitted); Montalvo v. Hutchinson, 90 Civ. 0299 (VLB), 1995 U.S. Dist. LEXIS 1934, * 4, fn. 3 (S.D.N.Y. Feb. 9, 1995) (finding indemnification evidence not relevant at trial); Provost v. Newburgh, 262 F.3d 146, 164 (2d Cir. 2001)(holding that it was improper for the district court to instruct the jury to consider the individual defendant's ability to pay in determining punitive damages award where the defendant did not offer evidence of his financial resources at trial).

Furthermore, the introduction of indemnification as evidence at trial would unfairly prejudice defendants Enhrenreich, Matos, and Pengel because if the jury is permitted to

assume that the City of New York will pay, the jury may not carefully assess issues of liability and/or damages. Providing evidence regarding potential indemnification by the City to the jury would unfairly prejudice defendants Enhrenreich, Matos, and Pengel because the jury could view the City as a "deep pocket" for purposes of any potential judgment. Furthermore, the issue of whether the City will indemnify an individual will not be made by the Corporation Counsel until *after* the litigation has concluded. New York State General Municipal Law Section § 50-k.

**POINT VIII**

**PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR AMOUNT TO THE JURY.**

While the Second Circuit has not adopted a flat prohibition to suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995). Such suggestions anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. Id.; See Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . .") The Court in Consorti went on to state:

> "A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations."

As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during his opening statement and/or summation.

## POINT IX

### PLAINTIFF SHOULD BE PRECLUDED FROM RAIDING ANY CLAIMS AGAINST "JOHN AND JANE DOES 1 THROUGH 7" AND SAID DEFENDANT SHOULD BE REMOVED FROM THE CAPTION OF THE COMPLAINT

Although the case caption currently includes "John and Jane Does 1 through 7," no such individual was ever identified or served. As such, plaintiff must be precluding from raising any evidence regarding "John and Jane Does 1 through 7," as plaintiff "cannot predicate claims against named defendants based on the acts of unnamed defendants since there is no basis for vicarious or shared liability between them."). Rasmussen v. City of New York, 766 F. Supp. 2d 399, 412 (E.D.N.Y. 2011)(noting that "[i]t  is another matter entirely to maintain a suit against officers on a 'John Doe' basis, or even to sue some by name and then assert claims against unnamed defendants, and expect to receive a verdict and judgment against the named officers based on what John Doe allegedly did"). Since plaintiff is seeking monetary damages from defendants in their personal capacity, he cannot recover from the anonymous "John and Jane Does 1 through 7." See Peterson v. Tomaselli, 469 F. Supp. 2d 146, 170 (S.D.N.Y. 2007)(citing Carey v. Piphus, 435 U.S. 247, 257 (1978) ("set of rules developed in common law of torts governs damages awards under § 1983")(internal citations omitted)).

### CONCLUSION

For the foregoing reasons, defendants City and Police Officers  Daniel Ehrenreich, Carlos Matos and Richard Pengel respectfully request that the Court grant their motions in their entirety and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
              June 29, 2012

                         MICHAEL A. CARDOZO
                         Corporation Counsel of the City of New York
                         Attorney for Defendants City of New York and
                         Police Officers Daniel Ehrenreich, Carlos Matos
                         and Richard Pengel 100 Church Street
                         New York, New York 10007
                         (212) 442-6686


                   By:    /s/
                         Morgan D. Kunz
                         Senior Counsel
                         Special Federal Litigation Division


                         /s/
                         Melissa Wachs
                         Assistant Corporation Counsel
                         Special Federal Litigation Division